# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

vs.                                            CR. No. 17-2771 JCH

**RODOLFO GONZALES-FIERRO**
**(a/k/a Martin Marquez-Rico),**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendant's Opposed Motion to Dismiss* [Doc. 30]. Defendant is charged with illegal reentry of a removed alien. Doc. 15. In the motion to dismiss, Defendant argues that the indictment should be dismissed because the prior order of removal against him was obtained during proceedings which were fundamentally unfair and in violation of Defendant's constitutional rights. In ruling on the motion, the Court has considered not only Defendant's opening brief, but also the Government's response [Doc. 31] and Defendant's reply [Doc. 36]. After reviewing the arguments raised by the parties and the applicable legal authorities, the Court concludes that the motion should be denied.

## FACTUAL BACKGROUND

According to the evidence placed before the Court, the facts are these. On May 1, 2009, Border Patrol Agent Jesus Serna arrested the Defendant, then known as Roldolfo Gonzales-

Fierro[1], near West Farmington near Deming, New Mexico. Doc. 31-2 at 1,2. The following day, on May 2, 2009, Border Patrol Agent Richard Arevalo advised Defendant of his Miranda rights [Doc. 31-3] and then interviewed Defendant in Spanish. Doc. 31-4 at 1. While under oath, Defendant identified himself as Rodolfo Gonzales-Fierro and stated that his date of birth was June 12, 1989. Doc. 31-4 at 1-2. If that was true, that would have made him nineteen years old at the time, about a month shy of his twentieth birthday. Defendant stated that he was born in Las Varas, Chihuahua, Mexico and was a citizen of Mexico. Doc. 31-4 at 2. Defendant stated that his mother was living in Santa Fe, New Mexico and that he also had cousins in the United States. *Id*. Defendant stated that he entered the United States illegally the previous day in order to work and travel to Santa Fe to see his mother. *Id*. Finally, Defendant declined his right to speak with the Mexican Consulate. *Id*. Defendant then initialed Form I-867 [Doc. 31-4] and waived his right to a hearing before an Immigration Court. Doc. 31-6. Agent Arevalo prepared and signed a form I-860, Notice and Order of Expedited Removal. Doc. 31-5. Defendant was processed for Expedited Removal proceedings and deported to Mexico.

Approximately eight years later, on September 11, 2017, Defendant was arrested in Santa Fe, New Mexico. A criminal complaint [Doc. 1] charged Defendant with reentry of a removed alien, in violation of 8 U.S.C. §§ 1326(a)(1) and (a)(2). *See also* Amended Criminal Complaint, Doc. 10. On October 11, 2017, the grand jury charged Defendant in an indictment for violations of 8 U.S.C. §§ 1326(a) and (b). Defendant has filed a motion to dismiss the indictment [Doc. 30] on the grounds that the prior Order of Removal was obtained during proceedings which were fundamentally unfair in violation of his Fifth Amendment right to due process.

---

[1] Defendant represents in his motion to dismiss that his "true, legal name is Martin Marquez-Rico." Doc. 30 at 1.

**DISCUSSION**

Defendant contends that his "true, legal name" [Doc. 30 at 1] is Martin Marquez-Rico. In the motion to dismiss, Defendant argues that at the time he executed the waiver of his rights found in form I-826, "he was only seventeen years old, he had no one to turn to for advice, it was very late at night and all he wanted was to leave jail as soon as possible." Doc. 30 at 3-4. He further argues: "Desperate to be released, Mr. Marquez waived his right to a hearing before an immigration officer and was never given the opportunity to present a claim for lawful status based on his father's recent naturalization as a United States citizen." Doc. 30 at 4. Thus, Defendant contends that the 2009 expedited removal order was invalid and cannot serve as the underlying basis of the current charges against him. Defendant did not request a hearing on the present motion.

In response, the Government argues first that the Court lacks jurisdiction over the underlying expedited removal order pursuant to 8 U.S.C. § 1252(g). Second, it contends that even if the Court has jurisdiction, the expedited order of removal was not fundamentally unfair. Third, it contends that even if the Court finds that the order was fundamentally unfair, Defendant's challenge must fail because he cannot show that there is a reasonable likelihood that, but for the errors complained of, he would not have been deported. The Court addresses these arguments in turn.

**I.     JURISDICTION**

An expedited removal proceeding under 8 U.S.C. § 1225 allows immigration officers to both determine whether certain aliens are inadmissible, and enter removal orders, generally without hearing or further review.

Two classes of individuals are subject to expedited removal proceedings. Originally, only aliens "arriving" in the United States were subject to the proceedings. However, the Department of Homeland Security has expanded the reach of expedited removal proceedings to aliens who have entered the United States, as long as they (1) "are physically present in the U.S. without having been admitted or paroled," (2) are discovered within 100 miles of the United States border, and (3) cannot establish that they have been "physically present in the U.S." for the fourteen days prior to the encounter with immigration authorities. Designating Aliens For Expedited Removal, 69 Fed. Reg. 48877-01, 48880 (Aug. 11, 2004). All such aliens are deemed "applicants for admission" into the United States, regardless of whether they seek to enter at a port of entry or have already entered the country. 8 U.S.C. § 1225(a)(1).

During an expedited removal proceeding, an immigration officer must conduct an inspection and determine whether the alien is inadmissible because the alien (1) has made a material misrepresentation to gain admission into the United States, (2) has "falsely represent[ed]" himself to be a United States citizen, or (3) does not possess a "valid entry document." *See* 8 U.S.C. § 1225(a)(3), (b)(1)(A)(i); *see also id*. § 1182(a)(6)(C)(i), (a)(6)(c)(ii)(I), (a)(7)(A)(i). When making a finding of inadmissibility, the examining immigration officer must "create a record of the facts of the case and statements made by the alien." 8 C.F.R. § 235.3(b)(2)(i). The officer "shall ... have the alien read (or have read to him or her) the statement." *Id*. Moreover, the officer "shall advise the alien of the charges against him or her on Form I–860, Notice and Order of Expedited Removal, and the alien shall be given an opportunity to respond to those charges in the sworn statement." *Id*. Then, if the officer determines the alien to be inadmissible, "the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to

apply for asylum ... or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). Unless an alien professes a fear of persecution or claims to be a lawful permanent resident, an expedited removal order "is not subject to administrative appeal." *Id*. § 1225(b)(1)(C).

Here, it appears that Defendant faced expedited removal proceedings because he was present in the United States without admission, had been discovered within 100 miles of the border, and could not establish that he had been present in the United States for the prior fourteen days. It also appears that the immigration authorities involved followed the correct procedures set forth above in determining that Defendant was subject to expedited removal.

Title 8 U.S.C. § 1252(a)(2)(A) establishes and limits the jurisdiction of courts to hear challenges to expedited removal orders: "Notwithstanding any other provision of law ..., including section 2241 of Title 28, ... no court shall have jurisdiction to review ... any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)," subject to the limited exceptions set forth in subsection (e). 8 U.S.C. § 1252(a)(2)(A)(i). Specifically, no court has jurisdiction to review "a decision by the Attorney General to invoke the provisions of [§ 1225(b)(1) ]," "the application of [that] section to individual aliens," or "procedures and policies adopted by the Attorney General to implement [that section]." *Id*. § 1252(a)(2)(A)(ii)-(iv). Additionally, § 1252(g) provides: "Except as provided in this section ..., no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." *Id*. § 1252(g). Thus, based upon the statutory scheme set forth above, the Court is forced to conclude that Defendant's expedited removal is not appealable here. 8 U.S.C. § 1225(b)(1)(C).

## II. COLLALTERAL ATTACK ON UNDERLYING DEPORTATION ORDER

Defendant argues that the proceedings that led to his expedited removal deprived him of due process and were constitutionally unfair. First, he argues that when he consented to the expedited order of removal, he did not understand the consequences of that action, including the fact that any future attempt to return to the United States from Mexico would almost certainly be met with a criminal penalty. Second, he contends that as a minor at the time of the removal, he should have been afforded greater protections and opportunities to seek counsel, but instead his actions were dictated by his strong desire to be released from custody as soon as possible. Defendant relies on 8 U.S.C. § 1326(d), which provides that in a criminal proceeding, an alien challenging the validity of a deportation order must demonstrate three things: (1) the alien exhausted any available administrative remedies against the order, (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review, and (3) the entry of the order was fundamentally unfair.

With regard to the third element, Defendant argues that entry of the order was fundamentally unfair because he was a minor at the time, and therefore he should have been granted additional legal protections. Instead, left to fend for himself, Defendant buckled under the tremendous pressure placed upon him as a minor in an intimidating situation and waived his right to a hearing before an immigration officer. Unfortunately for Defendant, the record does not support his argument. According to the documentary evidence on file, which Defendant does not appear to contest, Defendant stated under oath that he was almost 20 years old at the time of his removal. Now Defendant asserts that he was actually only 17 years old at the time. However, Defendant has come forward with no evidence—a birth certificate, an affidavit, or other papers—to show his true age. The mere assertions of counsel are not enough. Based on the

record before it, the Court concludes that Defendant was not a minor at the time of his prior removal, and that the entry of the Expedited Order of Removal was not fundamentally unfair.

**IT IS THEREFORE ORDERED** that *Defendant's Opposed Motion to Dismiss* [Doc. 30] is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**